# Exhibit A

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") and the Defense Health Agency (DHA), acting on behalf of the TRICARE Program (collectively, the "United States"), US WorldMeds, LLC, US WorldMeds Holdings, LLC, USWM Enterprises, LLC, and Solstice Neurosciences, LLC (collectively, "US WorldMeds"), Brian Bennett and Dr. Robert Chinnapongse (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.    US WorldMeds, LLC is a pharmaceutical manufacturer headquartered in Louisville, Kentucky, that sells and markets the prescription pharmaceutical products Apokyn® and Myobloc® (the "Subject Drugs") in the United States.

B.    US WorldMeds Holdings, LLC and USWM Enterprises, LLC are holding companies based in Louisville, Kentucky.

C.    On March 15, 2013, Brian Bennett ("Bennett") filed a *qui tam* action in the United States District Court for the District of Connecticut captioned *United States ex rel. Bennett v. US WorldMeds, LLC, et al.*, No. 3:13-cv-363 (SRU), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). Bennett alleges, *inter alia*, that US WorldMeds paid kickbacks to promote Apokyn and Myobloc in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and the False Claims Act, 31 U.S.C. §§ 3729-33. A second *qui tam* action was filed against US WorldMeds in the United States District Court for the Western District of Washington by Dr. Robert Chinnapongse ("Chinnapongse") on June 16, 2014. *United States ex rel. Chinnapongse v. US WorldMeds, LLC et al.*, No. 14-cv-876. On May 23, 2016, the *qui tam* action filed by Chinnapongse was transferred to the District of Connecticut, and is captioned *United States ex rel. Chinnapongse v. US WorldMeds*, LLC, No. 3:16-cv-0080 (SRU). Chinnapongse alleges, *inter alia*, that US WorldMeds paid kickbacks to physicians to promote Apokyn and Myobloc. The

two *qui tam* actions are collectively referred to as the "Civil Actions" and Bennett and Chinnapongse are collectively referred to as "Relators."

D.     The United States contends that US WorldMeds caused to be submitted claims for payment for the Subject Drugs to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"), and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE").

E.     The United States contends that it has certain civil claims against US WorldMeds:

1.     The United States alleges that, from January 1, 2012 through June 30, 2013, US WorldMeds paid kickbacks to Apokyn patients in the form of copayment assistance, using a third-party copayment foundation ("Foundation") as a conduit for those payments. In or around January 2012, US WorldMeds substantially increased the price of Apokyn, a decision that resulted in a corresponding increase to Medicare patients' copayment obligations (which for many patients exceeded $5,000 per year). The United States alleges that, from January 1, 2012 through June 30, 2013, US WorldMeds was the sole donor and knew that it was the sole donor to the foundation's Parkinson's Disease Fund ("the Fund"); and that US WorldMeds knew that the Fund disbursed virtually all of its payments to benefit Medicare patients who were using Apokyn for their Parkinson's Disease symptoms. The United States alleges that, during this time period, US WorldMeds: hired personnel from the foundation; received reports from its reimbursement support program that tracked Medicare Apokyn patients receiving payments from the Fund; and knew that Medicare Apokyn patients would not have filled their scripts without the copayment assistance given the high cost of Apokyn. The United States alleges that, through this conduct, US WorldMeds knowingly caused the submission of false claims to Medicare for Apokyn for patients who received these payments from January 1, 2012 through June 30, 2013.

2.     The United States alleges that US WorldMeds paid kickbacks to two individual physicians—Dr. "A" of Texas and Dr. "B" of New Jersey and New York—to induce prescriptions of the Subject Drugs, as set forth in this sub-paragraph. The United States alleges that, through this conduct, US WorldMeds knowingly caused the submission of false claims to

Medicare and TRICARE for Myobloc and Apokyn prescribed by Dr. "A" and Dr. "B" during the time periods specified below.

  i. The United States alleges that, between November 2011 and March 2014, US WorldMeds paid kickbacks to Dr. "A" in the form of excessive consulting fees, which included calls in which she discussed Myobloc for uses not approved by the Food and Drug Administration. The United States also alleges that US WorldMeds paid kickbacks to Dr. "A" in the form of meals and entertainment, including a trip to the Kentucky Derby for her and her spouse in May 2013, and a private plane ride between Dallas and San Antonio, and dinner for her, her spouse, and one of her staff members with US WorldMeds' executives in January 2013.

  ii. The United States alleges that, between January 2013 and December 2015, US WorldMeds paid kickbacks to Dr. "B" in the form of excessive speaking fees, including for events at expensive restaurants in New York City (including Eleven Madison Park, Atera, and Le Cirque). The United States alleges that a US WorldMeds' sales representative falsified her expense reports for some of these events, with her direct supervisor's knowledge, to obscure the number of attendees, cost per attendee, and purpose of the meetings. The United States alleges that a number of Dr. B's friends and colleagues were repeat attendees of her alleged "speaking" events. The United States further alleges that US WorldMeds paid kickbacks to Dr. B, including a $550 bottle of vodka at the Standard Hotel in August 2013, and two trips to the Kentucky Derby in May 2013 and May 2014, which benefited both Dr. B and her husband, a non-health care provider.

Collectively, this conduct is referred to below as the "Covered Conduct."

  F. Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

G.    US WorldMeds denies the allegations in Paragraph E and in the Civil Actions.

H.    This Agreement is made in compromise of disputed claims, and is neither an admission of liability by US WorldMeds, nor a concession by the United States that its claims are not well-founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.    US WorldMeds shall pay to the United States seventeen million and five hundred thousand dollars ($17,500,000) ("Settlement Amount"), of which eight million seven hundred and fifty thousand dollars ($8,750,000) is restitution, and interest on the Settlement Amount at a rate of 3.0% per annum from August 30, 2018, by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice. The Settlement Amount shall be paid as follows:

a.    US WorldMeds shall pay three million five hundred thousand dollars ($3,500,000), plus interest, no later than seven (7) days after the Effective Date of this Agreement.

b.    The remaining fourteen million dollars ($14,000,000), plus interest, shall be paid pursuant to the payment schedule attached hereto as Exhibit A.

c.    In connection with the payments due under this Paragraph, US WorldMeds agrees to execute a Stipulated Judgment, in the form attached hereto as Exhibit B, contemporaneously with this Settlement Agreement. Promptly after the Effective Date of this Agreement, the United States and US WorldMeds will file a motion in the Civil Action, on consent, for entry of a judgment in favor of the United States, as set forth in the Stipulated Judgment, and the United States will file the Stipulated Judgment with the Court. The entire balance of the Settlement Amount, or any portion thereof,

plus interest accrued on the principal as of the date of any prepayment, may

be prepaid without penalty.

2.      Conditioned upon the United States receiving the payments set forth in Paragraph

1, the United States shall pay 18% of each payment (including principal and interest) received to

Relator Brian Bennett by electronic funds transfer, and as soon as feasible after receipt of such

payment. It is understood by all of the Parties that the Relators, Brian Bennett and Robert

Chinnapongse, will reach their own agreement regarding their respective shares of the funds

paid by the United States to Relator Bennett.

3.      Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and

conditioned upon US WorldMeds' full payment of the Settlement Amount, the United States

releases US WorldMeds, together with its current and former parent corporations; direct and

indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners;

and the corporate successors and assigns of any of them, from any civil or administrative monetary

claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§

3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil

Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision for which the Civil Division of

the Department of Justice has actual and present authority to assert and compromise pursuant to

28 CFR Part O, Subpart I, 0.45(d); and the common law theories of payment by mistake, unjust

enrichment, and fraud.

4.      Subject to the exceptions in Paragraph 7 below, and conditioned upon US

WorldMeds' full payment of the Settlement Amount, Relators, for themselves and for their

heirs, successors, attorneys, agents, and assigns, release US WorldMeds from any civil monetary

claim Relators have on behalf of the United States for the Covered Conduct under the False

Claims Act, 31 U.S.C. §§ 3729-3733.

5.      In consideration of the obligations of US WorldMeds in this Agreement and the

Corporate Integrity Agreement (CIA), entered into between OIG-HHS and US WorldMeds, and

conditioned upon US WorldMeds' full payment of the Settlement Amount, the OIG-HHS agrees

to release and refrain from instituting, directing, or maintaining any administrative action

seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined

in 42 U.S.C. § 1320a-7b(f)) against US WorldMeds under 42 U.S.C. § 1320a-7a (Civil

Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud,

kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this

Paragraph and in Paragraph 7 (concerning excluded claims), below. The OIG-HHS expressly

reserves all rights to comply with any statutory obligations to exclude US WorldMeds from

Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a)

(mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes

the OIG-HHS from taking action against entities or persons, or for conduct and practices, for

which claims have been reserved in Paragraph 7, below.

6.      In consideration of the obligations of US WorldMeds set forth in this Agreement,

and conditioned upon US WorldMeds' full payment of the Settlement Amount, DHA agrees to

release and refrain from instituting, directing, or maintaining any administrative action seeking

exclusion from the TRICARE Program against US WorldMeds under 32 C.F.R. § 199.9 for the

Covered Conduct, except as reserved in this Paragraph and in Paragraph 7 (concerning excluded

claims), below. DHA expressly reserves authority to exclude US WorldMeds from the

TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory

exclusion), based upon the Covered Conduct. Nothing in this Paragraph precludes DHA or the

TRICARE Program from taking action against entities or persons, or for conduct and practices,

for which claims have been reserved in Paragraph 7, below.

7.      Notwithstanding the releases given in Paragraphs 3 through 6 of this Agreement,

or any other term of this Agreement, the following claims of the United States are specifically

reserved and are not released:

        a.   Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

        b.   Any criminal liability;

    c.  Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.  Any liability based upon obligations created by this Agreement;

    f.  Any liability of individuals;

    g.  Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    h.  Any liability for failure to deliver goods or services due; or

    i.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

8.    Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators' receipt of the payments described in Paragraph 2, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

9.    US WorldMeds agrees to pay Relator Bennett's reasonable attorney's fees and costs, as required by 31 U.S.C. § 3730(d).  Bennett and US WorldMeds will be entering into a separate settlement agreement covering the amount and payment of such fees and costs. Conditioned upon US WorldMeds' full payment of the Settlement Amount, and the agreed upon fees and costs, Relator Bennett, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases US WorldMeds, and its officers, agents, and employees, from any liability to

Relator Bennett arising from the filing of the Civil Action, including claims under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

10.     US WorldMeds agrees to pay Relator Chinnapongse's reasonable attorney's fees and costs, as required by 31 U.S.C. § 3730(d).  Chinnapongse and US WorldMeds will be entering into a separate settlement agreement covering the amount and payment of such fees and costs. Conditioned upon US WorldMeds' full payment of the Settlement Amount, and the agreed upon fees and costs, Relator Chinnapongse, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases US WorldMeds, and its officers, agents, and employees, from any liability to Relator Chinnapongse arising from the filing of the Civil Action, including claims under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

11.     US WorldMeds waives and shall not assert any defenses US WorldMeds may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

12.     US WorldMeds fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that US WorldMeds has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13.     US WorldMeds fully and finally releases the Relators and their heirs, successors, attorneys, agents, and assigns from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that US WorldMeds has asserted, could have asserted, or may assert in the future against the Relators and their heirs, successors, attorneys, agents, and assigns, related to the Civil Actions and the Relators' investigation and prosecution thereof.

14.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE, FEHBP or any state payer, related to the Covered Conduct; and US WorldMeds agrees not to resubmit to any Medicare contractor, TRICARE, FEHBP or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

15.     US WorldMeds agrees to the following:

a.     <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of US WorldMeds, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)     US WorldMeds' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement;

(5)     the payment US WorldMeds makes to the United States pursuant to this Agreement and any payments that US WorldMeds may make to Relator, including costs and attorneys' fees; and

(6)     the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as

described in Section III of the CIA; and (ii) prepare and submit reports to

the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in Paragraph

15.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of

costs that are not allowable based on any other authority applicable to US WorldMeds.

      b.    <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be

separately determined and accounted for by US WorldMeds, and US WorldMeds shall not

charge such Unallowable Costs directly or indirectly to any contracts with the United

States or any State Medicaid program, or seek payment for such Unallowable Costs

through any cost report, cost statement, information statement, or payment request

submitted by US WorldMeds or any of its subsidiaries or affiliates to the Medicare,

Medicaid, TRICARE, or FEHBP Programs.

      c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: US

WorldMeds further agrees that within 90 days of the Effective Date of this Agreement it shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph)

included in payments previously sought from the United States, or any State Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements, information

reports, or payment requests already submitted by US WorldMeds or any of its subsidiaries or

affiliates, and shall request, and agree, that such cost reports, cost statements, information

reports, or payment requests, even if already settled, be adjusted to account for the effect of the

inclusion of the Unallowable Costs. US WorldMeds agrees that the United States, at a minimum,

shall be entitled to recoup from US WorldMeds any overpayment plus applicable interest and

penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost

reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United

States pursuant to the direction of the Department of Justice and/or the affected agencies. The

United States reserves its rights to disagree with any calculations submitted by US WorldMeds

or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined

in this Paragraph) on US WorldMeds or any of its subsidiaries or affiliates' cost reports, cost

statements, or information reports.

        d.      Nothing in this Agreement shall constitute a waiver of the rights of the

United States to audit, examine, or re-examine US WorldMeds' books and records to

determine that no Unallowable Costs have been claimed in accordance with the provisions of

this Paragraph.

        16.     This Agreement is intended to be for the benefit of the Parties only. The Parties

do not release any claims against any other person or entity, except to the extent provided for

in Paragraph 17 (waiver for beneficiaries paragraph), below.

        17.     US WorldMeds agrees that it waives and shall not seek payment for any of the

health care billings covered by this Agreement from any health care beneficiaries or their

parents, sponsors, legally responsible individuals, or third party payors based upon the

claims defined as Covered Conduct.

        18.     Upon receipt of the payment described in Paragraph 1(a), above, the United States

shall promptly sign and file a stipulation of dismissal as to US WorldMeds in the Civil Actions

pursuant to Rule 41(a)(1). Upon receipt of the payment described in Paragraph 1(a), above, and

execution of the agreements between Relators and US WorldMeds described in Paragraphs 9-10,

above, the Relators shall promptly sign and file a stipulation of dismissal as to US WorldMeds in

the Civil Actions pursuant to Rule 41(a)(1).

        19.     In the event that US WorldMeds fails to pay the Settlement Amount as provided

in the payment schedule set forth in Exhibit A within fourteen (14) calendar days of the date

upon which each such payment is due, US WorldMeds shall be in Default of US WorldMeds'

payment obligations ("Default").

a. In the event of Default, the United States will provide a written Notice of Default, and US WorldMeds shall have an opportunity to cure such Default within fourteen (14) calendar days from the date of receipt of the Notice of Default. Notice of Default will be delivered to US WorldMeds, or to such other representative as US WorldMeds shall designate in advance in writing. If US WorldMeds fails to cure the Default within fourteen (14) calendar days of receiving the Notice of Default, and in the absence of an agreement with the United States of a modified payment, the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b. In the event of Default, the United States, at its sole discretion, may (i) declare this Agreement breached and proceed against US WorldMeds for any claims, including those to be released by this Agreement; (ii) take any action to execute and collect on the Stipulated Judgment; (iii) file an action for specific performance of the Agreement and/or the Stipulated Judgment; (iv) offset the remaining unpaid balance from any amounts due and owing to US WorldMeds and/or affiliated companies by any department, agency, or agent of the United States at the time of Default; and/or (v) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. US WorldMeds agrees not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

c. In the event of Default, the United States at its sole option may retain any payments previously made, rescind this Agreement and pursue the Civil

Actions or bring any civil and/or administrative claim, action, or proceeding against US WorldMeds for the claims that would otherwise be covered by the releases provided in Paragraphs 3 through 6, with any recovery reduced by the amount of any payments previously made by US WorldMeds to the United States under this Agreement. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event that the United States opts to rescind this Agreement pursuant to this Paragraph, US WorldMeds agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against US WorldMeds within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on August 6, 2018.

d.  If, before the Settlement Amount is paid in full, US WorldMeds commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (i) seeking to have any order for relief of US WorldMeds' debts, or seeking to adjudicate US WorldMeds as bankrupt or insolvent; or (ii) seeking appointment of a receiver, trustee, custodian, or other similar official for US WorldMeds or for all or any substantial part of US WorldMeds' assets, US WorldMeds admits and acknowledges that in any such case, proceeding, or other action, the United States shall hold an undisputed, noncontingent and liquidated allowed claim in the amount of $17.5 million, less any payments received pursuant to this Agreement, provided, however, that such payments are not otherwise avoided and recovered by US WorldMeds, receiver, trustee, custodian, or other similar official for US WorldMeds in such proceeding. In

the event of Default, OIG-HHS may exclude US WorldMeds from participating in all Federal health care programs until USWorldMeds pays the Settlement Amount, with interest, as set forth above, and reasonable costs. OIG-HHS will provide written notice of any such exclusion to US WorldMeds. US WorldMeds waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, US WorldMeds wishes to apply for reinstatement, it must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. US WorldMeds will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default as defined in this paragraph is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

20.    In exchange for valuable consideration provided in this Agreement, US WorldMeds acknowledges the following:

a. US WorldMeds has reviewed its financial situation warrants that it is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

b. In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to US WorldMeds, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact,

constitute a reasonably equivalent exchange of value. The Parties do not

intend to hinder, delay, or defraud any entity to which US WorldMeds was

or became indebted to on or after the date of any transfer contemplated in

this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

c.  If US WorldMeds' obligations under this Agreement are avoided for any

reason, including, but not limited to, through the exercise of a trustee's

avoidance powers under the Bankruptcy Code, the United States (a) may

rescind the releases in this Agreement and bring any civil and/or administrative

claim, action, or proceeding against US WorldMeds for the claims that would

otherwise be covered by the releases provided in Paragraphs 3 through 6 above;

and (b) the United States has an undisputed, noncontingent, and liquidated

allowed claim against US WorldMeds in the amount of $17.5 million, less any

payments received pursuant to this agreement, provided, however, that such

payments are not otherwise avoided and recovered by US WorldMeds,

receiver, trustee, custodian, or other similar official for US WorldMeds in such

proceeding.

d.  US WorldMeds agrees that any such claim, action, or proceeding brought by

the United States in connection with the Covered Conduct after a Default, or

avoidance of, US WorldMeds' obligations under this Agreement is not

subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it

would be an exercise of the United States' police and regulatory power to

protect public policy and public health, safety and welfare. US WorldMeds

shall not argue or otherwise contend that the United States' claims, actions, or

proceedings are subject to an automatic stay and, to the extent necessary,

consents to relief from the automatic stay for cause under 11 U.S.C. §

362(d)(1). US WorldMeds shall not plead, argue, or otherwise raise any

defenses under the theories of statute of limitations, laches, estoppel, or

similar theories, to any such civil or administrative claim, action, or

proceeding by the United States within 120 days of written notification to US

WorldMeds that the releases have been rescinded pursuant to this Paragraph,

except to the extent such defenses were available on August 6, 2018.

21.     Except as provided in paragraphs 9 and 10 herein, each Party shall bear its

own legal and other costs incurred in connection with this matter, including the preparation

and performance of this Agreement.

22.     Each party and signatory to this Agreement represents that it freely and

voluntarily enters in to this Agreement without any degree of duress or compulsion.

23.     This Agreement is governed by the laws of the United States. The exclusive

jurisdiction and venue for any dispute relating to this Agreement is the United States District

Court for the District of Connecticut. For purposes of construing this Agreement, this

Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall

not, therefore, be construed against any Party for that reason in any subsequent dispute.

24.     This Agreement constitutes the complete agreement between the Parties. This

Agreement may not be amended except by written consent of the Parties.

25.     The undersigned counsel represent and warrant that they are fully authorized

to execute this Agreement on behalf of the persons and entities indicated below.

26.     This Agreement may be executed in counterparts, each of which constitutes

an original and all of which constitute one and the same Agreement.

27.     This Agreement is binding on US WorldMeds' successors, transferees, heirs, and

assigns.

28.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

29.     All Parties consent to the United States' disclosure of this Agreement, and

information about this Agreement, to the public.

30.     This Agreement is effective on the date of signature of the last signatory to the

Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 4/8/19          BY: _____
                           JEFFREY A. McSORLEY
                           DOUGLAS F. ROSENTHAL
                           Trial Attorneys, Civil Division
                           U.S. Department of Justice


DATED: _____      BY: _____
                           JOHN B. HUGHES
                           Assistant United States Attorney
                           Chief, Civil Division
                           District of Connecticut


DATED: _____      BY: _____
                           ANNE F. THIDEMANN
                           Assistant United States Attorney
                           District of Connecticut


DATED: _____      BY: _____
                           LISA M. RE
                           Assistant Inspector General for Legal Affairs
                           Office of Counsel to the Inspector General
                           Office of Inspector General
                           United States Department of Health and Human Services


DATED: _____      BY: _____
                           LEIGH A. BRADLEY
                           Defense Health Agency
                           United States Department of Defense

## THE UNITED STATES OF AMERICA

DATED: _____          BY: _____
                              JEFFREY A. McSORLEY
                              DOUGLAS J. ROSENTHAL
                              Trial Attorneys, Civil Division
                              U.S. Department of Justice


DATED: 4-4-19          BY: _____
                              JOHN B. HUGHES
                              Assistant United States Attorney
                              Chief, Civil Division
                              District of Connecticut


DATED: 4/4/19          BY: _____
                              ANNE F. THIDEMANN
                              Assistant United States Attorney
                              District of Connecticut


DATED: _____          BY: _____
                              LISA M. RE
                              Assistant Inspector General for Legal Affairs
                              Office of Counsel to the Inspector General
                              Office of Inspector General
                              United States Department of Health and Human Services


DATED: _____          BY: _____
                              LEIGH A. BRADLEY
                              Defense Health Agency
                              United States Department of Defense

## THE UNITED STATES OF AMERICA

DATED: _____   BY: _____
JEFFREY A. McSORLEY
DOUGLAS J. ROSENTHAL
Trial Attorneys, Civil Division
U.S. Department of Justice

DATED: _____   BY: _____
JOHN B. HUGHES
Assistant United States Attorney
Chief, Civil Division
District of Connecticut

DATED: _____   BY: _____
ANNE F. THIDEMANN
Assistant United States Attorney
District of Connecticut

DATED: 04/02/2019   BY: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: _____   BY: _____
LEIGH A. BRADLEY
Defense Health Agency
United States Department of Defense

## THE UNITED STATES OF AMERICA

DATED: _____      BY:    _____
                                JEFFREY A. McSORLEY
                                DOUGLAS J. ROSENTHAL
                                Trial Attorneys, Civil Division
                                U.S. Department of Justice



DATED: _____      BY:    _____
                                JOHN B. HUGHES
                                Assistant United States Attorney
                                Chief, Civil Division
                                District of Connecticut



DATED: _____      BY:    _____
                                ANNE F. THIDEMANN
                                Assistant United States Attorney
                                District of Connecticut



DATED: _____      BY:    _____
                                LISA M. RE
                                Assistant Inspector General for Legal Affairs
                                Office of Counsel to the Inspector General
                                Office of Inspector General
                                United States Department of Health and Human Services



DATED: __APRK 2019__    BY:    _____
                                LEIGH A. BRADLEY
                                Defense Health Agency
                                United States Department of Defense

**US WORLDMEDS**

DATED: 3/26/19          BY: _____
                            H. Lee Warren
                            Chief Operating Officer
                            US WorldMeds, LLC

DATED: 3/26/19          BY: _____
                            H. Lee Warren
                            Chief Operating Officer
                            US WorldMeds Holdings, LLC

DATED: 3/26/15          BY: _____
                            H. Lee Warren
                            Chief Operating Officer
                            USWM Enterprises, LLC

DATED: 3/26/19          BY: _____
                            H. Lee Warren
                            Chief Operating Officer
                            Solstice Neurosciences, LLC

DATED: 3/28/19          BY: _____
                            SARA M. LORD, ESQ.
                            Counsel for US WorldMeds, LLC, US WorldMeds
                            Holdings, LLC, USWM Enterprises, LLC, and Solstice
                            Neurosciences, LLC

**BRIAN BENNETT**

DATED: 3-29-19   BY: _____
BRIAN BENNETT

DATED: 4/1/19   BY: _____
SUZANNE E. DURRELL, ESQ.
Counsel for Brian Bennett

DATED: 4/1/19   BY: _____
SILVIJA A. STRIKIS, ESQ.
Counsel for Brian Bennett

DATED: 4/1/19   BY: _____
JOSEPH S. HALL, ESQ.
Counsel for Brian Bennett

**ROBERT CHINNAPONGSE**

DATED: _____   BY: _____
DR. ROBERT CHINNAPONGSE

DATED: _____   BY: _____
SHAYNE STEVENSON
Counsel for Dr. Robert Chinnapongse

<u>**BRIAN BENNETT**</u>

DATED: _____        BY: _____

                             BRIAN BENNETT


DATED: _____        BY: __

                             SUZANNE E. DURRELL, ESQ.
                             Counsel for Brian Bennett


DATED: _____        BY: _____

                             SILVIJA A. STRIKIS, ESQ.
                             Counsel for Brian Bennett


DATED: _____        BY: _____

                             JOSEPH S. HALL, ESQ.
                             Counsel for Brian Bennett


<u>**ROBERT CHINNAPONGSE**</u>

DATED: 4/2/2019        BY: _____

                             DR. ROBERT CHINNAPONGSE


DATED: 4/2/19          BY: _____

                             SHAYNE STEVENSON
                             Counsel for Dr. Robert Chinnapongse

**Exhibit A**
**Payment Schedule**

| Quarterly Payment | Payment | 3.000% Interest | Principal | Balance |
|---|---|---|---|---|
| Settlement Amount | | | | $17,500,000.00 |
| | | | | |
| 4/8/2019 | $3,771,849.32 | $271,849.32 | $3,500,000.00 | $14,000,000.00 |
| 9/30/2019 | $3,605,000.00 | $105,000.00 | $3,500,000.00 | $10,500,000.00 |
| 12/31/2019 | $5,328,750.00 | $78,750.00 | $5,250,000.00 | $5,250,000.00 |
| 4/7/2020 | $5,289,375.00 | $39,375.00 | $5,250,000.00 | $0.00 |
| Total | $17,994,974.32 | $494,974.32 | $17,500,000.00 | |

**_Notes:_**
*Up-Front payment includes handshake interest from 10/1/18-04/8/2019 (189 days).*

**EXHIBIT B**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.* | ) | No. 3:13CV363 (SRU) |
| <u>ex</u> <u>rel</u>. BRIAN BENNETT | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| US WORLDMEDS, LLC; SOLSTICE | ) | |
| NEUROSCIENCES, LLC; QUINTILES | ) | |
| TRANSNATIONAL CORP.; QUINTILES | ) | |
| COMMERCIAL US, INC.; and THE | ) | **[FILED UNDER SEAL]** |
| ASSISTANCE FUND, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, *et al.* | ) | No. 3:16CV0080 (SRU) |
| <u>ex</u> <u>rel</u>. ROBERT CHINNAPONGSE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| US WORLDMEDS, LLC | ) | **[FILED UNDER SEAL]** |
| | ) | |
| Defendant. | ) | |

**STIPULATED JUDGMENT**

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

the parties have negotiated a settlement in the above-referenced matters, which settlement took

effect on April __, 2019 (the Settlement Agreement); and that

As part of that negotiated settlement, US WorldMeds, LLC, US WorldMeds Holdings,

LLC, USWM Enterprises, LLC, and Solstice Neurosciences, LLC, pursuant to Fed. R. Civ. 54 and

58, hereby consent to entry of judgment against them, and in favor of the plaintiff, the United States of America, in the amount of seventeen million and five hundred thousand dollars ($17,500,000), plus interest, as set forth in the Settlement Agreement.  A copy of that Settlement Agreement is attached as Exhibit 1 hereto, and is incorporated herein by reference.

The parties shall each bear their own costs, fees, and expenses.

Respectfully Submitted,

**ON BEHALF OF THE UNITED STATES**

Dated: _____                    JOHN H. DURHAM
                                        UNITED STATES ATTORNEY

                        BY:     _____
                                ANNE F. THIDEMANN
                                ASSISTANT U.S. ATTORNEY
                                Federal Bar No. CT28028
                                1000 Lafayette Boulevard, 10th Floor
                                Bridgeport, Connecticut 06604
                                (203) 696-3045 (phone)
                                (203) 579-5575 (fax)
                                Anne.Thidemann@usdoj.gov

**ON BEHALF OF US WORLDMEDS**

Dated: 3|29|19          BY:     _____
                                US WorldMeds, LLC

Dated: 3|29|19          BY:     _____
                                US WorldMeds Holdings, LLC

Dated: 3|29|19          BY:     _____
                                US WorldMeds Enterprises, LLC

Dated: 3|29|19          BY:     _____
                                Solstice Neurosciences, LLC

2

Dated: 3/29/19

BY: _____

SARA M. LORD, ESQ.
Arnall Golden Gregory LLP
Counsel for US WorldMeds LLC, US WorldMeds
Holdings, LLC, US WorldMeds Enterprises, LLC,
and Solstice Neurosciences, LLC
Federal Bar No. ct_____
1775 Pennsylvania Avenue, NW, Suite 1000
Washington D.C. 20006
(202) 677-4054 (phone)
(202) 677-4055 (fax)
Sara.Lord@agg.com

3